```
           IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF:            )
                             )
TODD & ELLEN RING,           )
                             )    CASE NO. BK04-83384
          Debtor(s).         )         A04-8118
PRAIRIE CONSTRUCTION COMPANY,)
                             )
          Plaintiff,         )    CH. 7
                             )
    vs.                      )
                             )
TODD RING,                   )
                             )
          Defendant.         )
```

MEMORANDUM

Trial was held in Omaha, Nebraska, on September 27 and December 8, 2005, on the plaintiff's complaint objecting to discharge and to determine dischargeability of a debt. Howard Duncan appeared for the defendant debtor, and J.P. "Sam" King appeared for the plaintiff. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(I) and (J).

The debtor owned and operated a flooring business called Architectural Flooring Company, Inc. In 2002, Prairie Construction Company hired the debtor's company as flooring subcontractor on a project to expand a high school gymnasium. Architectural Flooring purchased materials for the project on account with a supplier, based on a credit application and sales agreement. A personal guarantee, purportedly signed by the debtor, was provided to the supplier as part of the credit package. Architectural Flooring ordered and received more than $20,000 worth of flooring materials for the school project in the fall of 2002, but it did not pay for the materials. Architectural Flooring went out of business in June 2003.

The supplier assigned its claim to Prairie Construction, which obtained a judgment of $34,473.38 against Architectural Flooring in state court. Prairie Construction then filed a state court lawsuit against the debtor to collect the judgment, but the underlying Chapter 7 petition was filed before that case went to trial. Prairie Construction filed this adversary proceeding objecting to discharge and asking that the debt owed to it be excepted from discharge. The non-dischargeability allegations are based on fraud,

false pretenses, and false representations made by the debtor under 11 U.S.C. § 523(a)(2). The objection to discharge is based on 11 U.S.C. § 727(a)(3) and allegations regarding the debtor's concealment, destruction, or failure to keep records pertaining to this debt, and on the debtor's allegedly false oath or account under § 727(a)(4)(A).

The case was tried on September 27, 2005, and continued to December 8, 2005, to permit an additional witness to appear and testify.

I. Statutory elements

A. 11 U.S.C. § 523(a)(2)(A)

The Bankruptcy Code prohibits debtors from discharging debts "incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." Cohen v. de la Cruz, 523 U.S. 213, 217 (1998) (internal citation omitted).

To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. Universal Bank, N.A. v. Grause (In re Grause), 245 B.R. 95, 99 (B.A.P. 8th Cir. 2000) (citing Thul v. Ophaug (In re Ophaug), 827 F.2d 340, 342 n.1 (8th Cir. 1987), as supplemented by Field v. Mans, 516 U.S. 59 (1995)). In Field v. Mans, the Supreme Court held that § 523(a)(2)(A) requires justifiable reliance, in which "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." Id. at 71 (citing the Restatement (Second) of Torts § 545A cmt. b (1976)).

When assessing the debtor's knowledge that the representation was false, the court must consider the debtor's knowledge and experience. Merchants Nat'l Bank v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (citing In re Duggan, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). The knowledge requirement can be satisfied with a finding that the debtor recklessly disregarded the truth by making the false representation under circumstances where

-2-

he should have known it to be false. Id.

"The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." Moen, 238 B.R. at 791 (quoting Moodie-Yannotti v. Swan (In re Swan), 156 B.R. 618, 623 n.6 (Bankr. D. Minn. 1993)). "Because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." Id. (quoting Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1287 (8th Cir. 1987)). The intent to deceive will be inferred when the debtor makes a false representation and knows or should know that the statement will induce another to act. Id. (quoting Federal Trade Comm'n v. Duggan (In re Duggan), 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)).

    B.   11 U.S.C. § 727(a)(3)

Section 727(a)(3) denies a discharge to a debtor who has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

That section does not contain an intent element, but rather imposes a standard of reasonableness. The debtor is required "to take such steps as ordinary fair dealing and common caution dictate to enable the creditors to learn what he did with his estate." Davis v. Wolfe (In re Wolfe), 232 B.R. 741, 745 (B.A.P. 8th Cir. 1999) (quoting First State Bank of Newport v. Beshears (In re Beshears), 196 B.R. 468, 474 (Bankr. E.D. Ark. 1996)). Once a plaintiff has made a prima facie case, the burden shifts to the debtor to justify why the particular record was not maintained. Wolfe, 232 B.R. at 745.

Debtors are to be able to provide records which provide creditors with enough information to ascertain the debtor's financial condition and track the debtor's financial dealings with substantial completeness and accuracy for a reasonable period preceding the petition date. Grau Contractors, Inc. v. Pierce (In re Pierce), 287 B.R. 457, 461 (Bankr. E.D. Mo. 2002) (citing In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996)).

    C.   11 U.S.C. § 727(a)(4)

Section 727(a)(4) of the Bankruptcy Code denies a debtor a discharge if, in or in connection with the case, he or she

knowingly and fraudulently made a false oath or account. A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud. Jordan v. Bren (In re Bren), 122 Fed. Appx. 285, 286 (8th Cir. 2005) (citing Korte v. Internal Revenue Serv. (In re Korte), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001)).

Debtors are required to provide complete, accurate, and reliable information at the commencement of the case so that all parties may adequately evaluate the case and the estate's property may be appropriately administered. Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987). Courts often will tolerate a single omission or error resulting from innocent mistake. However, multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive. See In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) ("Chavin concedes . . . that not caring whether some representation is true or false — the state of mind known as 'reckless disregard' — is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material."); Korte, 262 B.R. at 474 (quoting Golden Star Tire, Inc. v. Smith (In re Smith), 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993)) ("[S]tatements made with reckless indifference to the truth are regarded as intentionally false."); Hamo v. Wilson (In re Hamo), 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999) ("[A] knowingly false statement or omission made by the Debtor with reckless indifference to the truth will suffice as grounds for the denial of a Chapter 7 general discharge."); First State Bank v. Beshears (In re Beshears), 196 B.R. 468, 476 (Bankr. E.D. Ark. 1996).

The creditor must show that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement to be false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case. Taylor v. Montgomery (In re Montgomery), 309 B.R. 563, 567 (Bankr. W.D. Mo. 2004) (citing Sholdra v. Chilmark Fin'l L.L.P. (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001)). The threshold of materiality is fairly low. Cepelak v. Sears (In re Sears), 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000). A matter is "material" if it concerns the discovery of assets or the existence and disposition of estate property. Ellsworth v. Bauder (In re Bauder), 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005).

II.  Factual findings and discussion

The plaintiff asserts that the debt should be excepted from discharge on the basis of fraud or false representations because, when the personal guarantee was signed, the debtor had no intention

-4-

of paying for the flooring. The plaintiff further asserts that a bankruptcy discharge should be denied to the debtor because he has given false records and accounts. The debtor maintains that he did not sign the personal guarantee nor does he know who did. He testified that problems with the flooring or its installation caused the school to withhold payments, so Architectural Flooring did not receive payments from the general contractor and was unable to make payments to its supplier.

The primary issue raised by the plaintiff is whether the personal guarantee contains a valid signature of the debtor. Neither the debtor nor his operations manager admit signing the guarantee, although the document contains what appears to be the signature of the debtor.

The paperwork to apply for credit with the flooring supplier was completed by Architectural Flooring's operations manager, Dawn Huckle. The debtor had authorized her to sign his name to checks, and to sign contracts and credit applications on behalf of the company. Ms. Huckle testified that she believed she was authorized to sign the debtor's name on all company documents, although she does not recall signing the personal guarantee at issue here. The debtor admitted that he had never told her she was not authorized to sign his name on personal guarantees.

The dispute over the signature on the personal guarantee first arose when the debtor gave a deposition in connection with the state court lawsuit filed against him by Prairie Construction. He had met with the flooring supplier's business manager in February 2003, at the business manager's request, to attempt to work out payment of the debt. The personal guarantee was discussed at that meeting; the debtor did not deny that it was his. However, at his deposition in 2004, he testified that he did not sign the guarantee, did not authorize anyone else to sign it, and had no knowledge of who might have signed it in his name.

As noted above, to succeed on a § 523(a)(2)(A) claim, Prairie Construction must establish that the debtor made a representation that he knew to be false with the intention of deceiving the creditor, who justifiably relied on that representation to its detriment. The debtor's company opened a credit account with the flooring supplier to purchase materials for the gym project. Because Architectural Flooring had no real track record with a bank, the flooring supplier's business manager testified that he needed additional information about the project and a personal guarantee from the owner before he would approve the credit account. The debtor – and if not the debtor, then his company's operations manager – understood that a personal guarantee was

necessary to obtain credit and signed and submitted the guarantee in order for the application to be approved. The business manager for the flooring supplier testified that he relied on that guarantee in deciding to extend credit to Architectural Flooring, and the supplier was harmed when the company did not pay for the merchandise.

The false nature of a representation can be established by showing that the debtor made the representation with reckless disregard, *i.e.*, not caring whether it was true or not. Here, the debtor testified consistently that he did not sign the guarantee and does not know who did, although he conceded that Ms. Huckle could have signed it, and after comparing the signature on the guarantee with the signature on checks known to be signed in the debtor's name by her, he stated it was likely that she signed it. He also testified that he was unaware of the guarantee until the February 2003 meeting with the supplier's business manager. Nevertheless, Ms. Huckle testified that when she left the company in October 2002, she prepared files and status reports for each pending project and left them on the debtor's desk after learning he was unable or unwilling to meet with her personally to go over the files. Thus, regardless of whether the debtor knew about the guarantee at the time it was signed in August 2002, he had reason to be aware of it when the project file was delivered to him in October.

It is clear from the testimony that Ms. Huckle was authorized to sign the debtor's name to many legal documents arising in the course of the business. In fact, she testified that the debtor sometimes became angry with her if she did not timely sign a document on his behalf, even if it was something she wanted to discuss with him first. It is also clear she believed — and was not instructed otherwise by the debtor — that she was authorized to sign his name to any company document. The evidence does not fully establish which of the two individuals signed the guarantee, although it strongly suggests that Ms. Huckle did. It is clear that if Ms. Huckle did sign the guarantee, she did so under the authorization — whether explicit or implicit — of the debtor. Therefore, I find that the debt should be excepted from discharge under § 523(a)(2)(A).

The plaintiff argues that the debtor should be denied a discharge because he stated in his discovery responses and testified at trial that he does not know who signed the guarantee. The plaintiff seems to want to force the debtor to admit openly and expressly that Ms. Huckle signed the document. He has not admitted that, although he has suggested it. One cannot say absolutely, based on the evidence, that she did, although that conclusion is

the most reasonable one to draw. The debtor testified that he has never seen the original guarantee, so he must not have been present when it was signed and would have no first-hand knowledge regarding the signer. His testimony that he does not know who signed it therefore is technically correct, as he can only surmise who signed it, if it was not him. He may also have other reasons to respond to discovery requests and direct examination in the manner he did. None of that rises to the level of a false oath or account under § 727(a)(4)(A).

There has been no evidence to support a denial of discharge under § 727(a)(3) for concealing, destroying, mutilating, falsifying, or failing to keep records. Therefore, the objections to discharge will be denied.

IT IS ORDERED: The objections to discharge under § 727(a)(3) and § 727(a)(4)(A) are denied. A separate judgment will be entered declaring this debt non-dischargeable under § 523(a)(2)(A).

DATED:    February 14, 2006

                                        BY THE COURT:

                                        /s/ Timothy J. Mahoney
                                        Chief Judge

Notice given by the Court to:
    Howard Duncan
    *J.P. "Sam" King
    U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.